

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00663-CV

**IN THE INTEREST OF E.J.C.T.**, a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01382
Honorable Kimberly Burley, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:          Irene Rios, Justice
                  Lori I. Valenzuela, Justice
                  Velia J. Meza, Justice

Delivered and Filed: March 19, 2025

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child,

E.J.C.T.[1] In a single issue, Mother challenges the sufficiency of the evidence supporting the trial

court's finding that termination of her parental rights was in the child's best interest. We affirm.

### BACKGROUND

The Department became involved in the underlying case while it was proceeding in a

separate termination case concerning the parental rights to one of Mother's other children,

E.J.C.T.'s sibling. The Department was concerned the children were not getting enough food,

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parent as "Mother," the child using its initials or as "the child," and other persons by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

Mother was threatening to return one of her children to foster care if he did not behave, and there was a concern of continued domestic violence between Mother and T.T., the father of one of Mother's children.

On September 12, 2023, the Department filed a petition seeking emergency removal of E.J.C.T. and termination of Mother's parental rights to the child. The trial court held a two-day bench trial on August 19, 2024, and September 23, 2024. The trial court heard testimony from Dina Lemus, the Department's supervising investigator; Latricia Prather and Danette Miller, the Department's caseworkers; and CASA volunteer S.C. Mother did not appear on the first day of trial but did appear on the second day of trial.

On September 25, 2024, the trial court signed an order terminating Mother's parental rights to E.J.C.T. The trial court terminated Mother's parental rights based on statutory grounds (D), (M), and (O) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (M), (O). The trial court also found it was in the child's best interest to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)

(conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This

is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

## BEST INTEREST

Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the child's best interest.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2]

---

[2] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance

*See id.* § 263.307(b). We also consider the *Holley* factors.[3] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* Thus, a best interest finding does not require proof of any particular factor. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.). In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well

---

abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

Mother and her three children were at a battered women's shelter when the Department received the referral on E.J.C.T., then three months old. At this time, Mother's two oldest children were already under the care of the Department for domestic violence concerns. Mother's parental rights were not terminated to her oldest child but were eventually terminated to her second child, whom she shared with T.T, based on a failure to protect the child from continued domestic violence between Mother and T.T. Upon investigating the referral, Prather noted the children appeared fine, but Mother had a black eye. Mother claimed she received the black eye when she slipped and fell, but the Department discovered Mother was lying about the cause of the injury. Mother's oldest child explained that T.T. caused Mother's black eye. The oldest child stated he has seen T.T. hit his mother with closed and open fists, and he was afraid of T.T. because he would threaten to hit or punish him. While Mother denied having continued contact with T.T., the investigator and caseworkers involved in Mother's cases testified differently. The Department received reports that Mother was driving T.T.'s vehicle; Mother showed T.T. the location of the battered women's shelter, and T.T. was seen outside the shelter; Mother routinely took the children to T.T.'s apartment and, at least once, the children were left outside in the heat for an extended period of time; Mother stayed with T.T. in a hotel; and T.T. accompanied Mother at her sister's funeral in early 2024. Miller specifically reported that T.T. drove Mother to her visits with her children, and T.T. acted aggressively towards Mother on one of the visits.

Even more alarming, T.T. was arrested at Mother's apartment in the summer of 2024 for assaulting Mother while she was pregnant with her fourth child. T.T. messaged Prather to tell her

he was the father of Mother's fourth child, indicating Mother was maintaining contact with T.T. while the underlying case was pending.

Following the arrest, T.T. was charged with assault of a pregnant person, and then listed Mother's address on his bond. The trial court in T.T.'s criminal proceeding ordered T.T. to have no contact with Mother; however, T.T. filed a motion on July 8, 2024, to amend his bond to replace the no contact order with a no harmful or injurious contact order. Mother signed an affidavit that was attached to the motion stating it is her "wish and desire that [T.T.'s] bond condition be modified from no contact to no harmful or injurious contact." *See In re L.M.W.*, No. 04-22-00577-CV, 2023 WL 2357706, at *7 (Tex. App.—San Antonio Mar. 6, 2023, pet. denied) (mem. op.) (holding unresolved domestic violence between the parents supports a trial court's finding that termination of parental rights is in the child's best interest).

It is axiomatic that a child's exposure to domestic violence can produce a home environment that endangers a child's well-being. *In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *7 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) ("Evidence of the parents' history of domestic violence supports the trial court's best[-]interest[ ] findings."). The trial court also heard testimony that domestic violence between the parents occurred in the children's presence. Although the endangering conduct may not have been directed to E.J.C.T., the trial court could have reasonably concluded the exposure to domestic violence endangered the child. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[E]ndangering conduct is not limited to actions directed towards the child."); *see also In re J.I.T.P.*, 99 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding exposure to domestic violence supports the trial court's finding that termination is in the child's best interest even when the child is not the intended victim of the violence). Mother's failure to protect E.J.C.T. from domestic violence and her

insistence to maintain her relationship with her abuser supports the trial court's best-interest finding. *See J.I.T.P.*, 99 S.W.3d at 846.

Moreover, the trial court also heard evidence that Mother failed to complete all the services on her service plan. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (concluding evidence that a parent's failure to comply with the court-ordered service plan may also support the trial court's best-interest determination); *A.H.*, 2015 WL 7565569, at *9 (holding failure to complete family service plan is indicative of failure to prioritize child). Mother's service plan, which was admitted into evidence, required Mother to, among other things, maintain stable employment and housing, participate and complete a parenting class and domestic violence class, participate and complete a psychological evaluation, and engage in counseling. Mother signed the plan. Miller verified Mother had complied with her service plan by maintaining stable employment and stable housing. And while Miller acknowledged Mother completed parenting and domestic violence classes in her other termination case regarding her second child, Mother has not achieved the goals of the domestic violence course because she has chosen to remain in an abusive relationship. Miller testified individual counseling is one of the most important services for a parent involved in domestic violence, yet she did not receive anything indicating Mother completed the psychological evaluation or counseling. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (stating the trial court considers in its best-interest determination the parent's willingness and ability "to seek out, accept, and complete counseling services").

While both Miller and Prather agreed Mother has performed several of her services pursuant to her service plans in her two open Department cases, the caseworkers both explained that Mother appeared to be just checking the boxes and not actually addressing the crux of the Department's real concern—Mother's continued abusive relationship with T.T.

E.J.C.T. is currently in a kinship placement and his needs are being met. The foster family has expressed a desire to adopt him if Mother's parental rights are terminated. The kindship placement has already adopted E.J.C.T.'s other sibling, Mother's second child, following the termination of Mother's parental rights to that child. Additionally, Mother's oldest child, is placed in another home which shares kinship with E.J.C.T.'s placement and the three siblings maintain contact with each other.

Miller opined termination of Mother's parental rights was in E.J.C.T.'s best interest because Mother's pattern of behavior is unchanged, and she has failed to show she can provide E.J.C.T. with a safe environment free of domestic violence. In contrast, Miller testified the foster family will be able to meet E.J.C.T.'s needs and provide him with a permanent home where he will live with one of his siblings and be able to maintain significant contact with his other sibling. S.C., the CASA volunteer, testified she supported the State's recommendation that Mother's parental rights be terminated to E.J.C.T. and opined it was in the best interest of the child. S.C. added that her main concern is the safety of the child, and the foster family E.J.C.T. is currently placed with provides a very stable, loving environment.

Although the trial court heard some evidence of Mother's work towards reunification with E.J.C.T., there was overwhelming evidence Mother continues to maintain a relationship with her abusive paramour, T.T. The trial court could have reasonably concluded Mother's failure to remove herself from the abusive relationship would only perpetuate a volatile environment involving domestic violence. The trial court also heard evidence E.J.C.T. is placed with a foster-to-adopt family who already has custody of E.J.C.T.'s sibling and wants to adopt E.J.C.T.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction

that termination of Mother's parental rights was in E.J.C.T.'s best interest. *See id.* § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

Accordingly, Mother's sole issue is overruled.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to E.J.C.T.

Irene Rios, Justice